MULLIN HOARD & BROWN, L.L.P.
Brad W. Odell, SBN: 24065839
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone:  806-765-7491
Telefax:    806-765-0553
Email: bodell@mhba.com
***Attorneys for Debtor, Texas Core Energy, LLC***

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TEXAS CORE ENERGY, LLC | § | Case No. 23-50021-RLJ-11 |
| | § | |
| Debtor. | § | |

### DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL ON AN INTERIM BASIS AND TO SET FINAL HEARING

TO THE HONORABLE ROBERT L. JONES, U.S. Bankruptcy Judge:

NOW COMES, TEXAS CORE ENERGY, LLC (the "Debtor"), the Debtor in the above-referenced bankruptcy proceeding, and pursuant to Bankruptcy Rule 4001(b) file this *Debtor's Emergency Motion for Authority to Use Cash Collateral on an Interim Basis and to Set Final Hearing* ("Motion").  In support, the Debtor would show:

### *Summary of Relief Requested*

This Motion seeks interim use of cash collateral for a period of thirty (30) days to avoid immediate and irreparable harm to the bankruptcy estate of the Debtor, and also requests the Court to set a final hearing on the use of cash collateral.

Pioneer Bank, FSB ("Pioneer") asserts a security interest in the accounts receivable, inventory, real estate, and other personal property of the Debtor to secure the repayment of five loans having an aggregate outstanding balance of an estimated $3,581,642.49.

The cash collateral sought to be used in accordance with the requests set out in this Motion will be used to pay the normal day-to-day expenses of the Debtor's operations such as payroll, rent, utilities, purchase inventory, office expenditures, insurance, and sales taxes.

The Motion proposes to grant the Pioneer replacement liens in the accounts receivable of the Debtor of equal validity, nature, and priority as its pre-petition liens.

### *Texas Core Energy, LLC*

1. The Debtor, Texas Core Energy, LLC, is a Texas limited liability company which owns and operates a manufacturing and sales business in Kilgore and Odessa, Texas. The Debtor's corporate offices are located at 13033 Quaker Avenue, Lubbock, Texas. The company's members are Taha Habib and Abraham Carranza.

2. The Debtor has two lines of business that it is involved in. The Debtor operates a fabrication division known as TOCE International or TOCE Tank & Vessel in which the Debtor fabricates tanks and vessels for customers in multiple industries, including but not limited to the oil & gas industry.

3. The Debtor likewise operates a supply business for parts and supplies used in the oil & gas industry. This division of the Debtor is known as TOCE Manufacturing.

4. The Debtor was organized as a series LLC under Texas law, and two series LLCs were formed under the names of West Texas Select Tire Services, LLC and GM Core Group, LLC.

5. The Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code on February 14, 2023. The Debtor elected to proceed under Subchapter V of Chapter 11. The Debtor, therefore, has the rights, powers and duties of a Debtor in Possession and continues to hold possession of and desires to maintain and operate its business pursuant to the authority of

the Bankruptcy Code set out in § 1184.

6. At the time of the filing of this Motion, a Subchapter V trustee ("Trustee") had not yet been appointed by the Office of the United States Trustee for Region 6. Once a Trustee is appointed, Debtor will provide the Trustee notice of the emergency setting on this Motion.

*Indebtedness Owing to Pioneer Bank, FSB*

7. The Debtor has five loans with Pioneer. On April 20, 2021, the Debtor executed a promissory note in favor of Pioneer in the original principal amount of $1,225,420.00 (the "**Real Estate Note**") to acquire real property in Kilgore, Texas to operate its fabrication business for TOCE Tank & Vessel. The Real Estate Note was original set up as an advancing loan to allow the Debtor to make improvements to the real property to operate its fabrication business. However, as described more fully herein, the Debtor instead determined to lease other real property in Kilgore, Texas which was available to operate its fabrication business. Therefore, the Real Estate Note was modified to be a term loan without the ability to take any advances. The outstanding balance of the Real Estate Note as of February 6, 2023 is $593,582.83.

8. The Real Estate Note is secured by a Deed of Trust covering the real property commonly known as 2103 Highway 31 E, Kilgore, Texas 75662 (the "**Fabrication Facility**"). The majority of the Debtor's inventory, equipment, and work in progress has been relocated to the Fabrication Facility after the Debtor paused operations in the tank and vessel division.

9. On January 10, 2020, the Debtor executed a promissory note in favor of Pioneer in the original principal amount of $1,000,000.00 (the "**CapEx LOC**"). The CapEx LOC is a line of credit to provide the Debtor with working capital for its fabrication business. The Debtor would take orders from customers, receive certain prepayments for the orders, and draw on the CapEx LOC to fund the remainder of the Debtor's capital needs to process the customers' orders.

The Debtor increased the available credit under the CapEx LOC to $2,250,000 in November of 2021. The outstanding balance of the CapEx LOC as of February 6, 2023 is $787,387.90.

10. The CapEx LOC is secured by the Debtor's accounts receivable, inventory, and equipment pursuant to multiple security agreements and loan agreements between the Debtor and Pioneer. Pioneer has filed UCC-1s with the Texas Secretary of State's Office relating to the CapEx LOC.

11. On January 10, 2020, the Debtor executed a promissory note in favor of Pioneer in the original principal amount of $1,000,000.00 (the "**Inventory RLOC**"). The Inventory RLOC is a revolving line of credit to provide the Debtor with capital to acquire inventory on hand for use in its fabrication business. The Debtor increased the available credit under the Inventory RLOC to $1,500,000 in November of 2021. The outstanding balance of the Inventory RLOC as of February 6, 2023 is $1,489,014.25.

12. The Inventory RLOC is secured by the Debtor's accounts receivable, inventory, and equipment pursuant to multiple security agreements and loan agreements between the Debtor and Pioneer. Pioneer has filed UCC-1s with the Texas Secretary of State's Office relating to the Inventory RLOC.

13. On January 21, 2021, the Debtor executed a promissory note in favor of Pioneer in the original principal amount of $234,750.00 (the "**Machine Loan**") to acquire a tank fabrication process machine to be used in the Debtor's fabrication division of TOCE Tank & Vessel. The outstanding balance of the Machine Loan as of February 6, 2023 is $89,264.47.

14. The Machine Loan is secured with a purchase money security interest in the tank fabrication process machine and a lien against the Debtor's equipment, accounts receivable, and inventory pursuant to multiple security agreements and loan agreements between the Debtor and

Pioneer. Pioneer has filed UCC-1s with the Texas Secretary of State's Office relating to the Machine Loan.

15. On November 16, 2020, the Debtor executed a promissory note in favor of Pioneer in the original principal amount of $800,000.00 (the "**Equipment Loan**"). The proceeds from the Equipment Loan were used in the operation of the Debtor's fabrication business. The outstanding balance of the Equipment Loan as of February 6, 2023 is $622,393.04.

16. The Equipment Loan is secured with a lien against the Debtor's equipment, accounts receivable, and inventory pursuant to multiple security agreements and loan agreements between the Debtor and Pioneer. Pioneer has filed UCC-1s with the Texas Secretary of State's Office relating to the Equipment Loan.

17. The Debtor's assets securing the indebtedness described herein are as follows:

| Asset Category | Value |
|---|---|
| Real Estate – Fabrication Facility | $1,100,000.00 |
| Accounts Receivable – Tank & Vessel | $330,410.00 |
| Accounts Receivable – Manufacturing | $166,980.10 |
| Inventory – Tank & Vessel | $464,324.83 |
| Work in Progress – Tank & Vessel | $1,210,551.67 |
| Inventory – Manufacturing | $849,205.96 |
| Equipment – Tank & Vessel | $689,018.77 |
| Total | **$4,810,491.33**[1] |

18. Based on the foregoing, Pioneer appears to be secured on the indebtedness owed on the Real Estate Note, the CapEx LOC, the RLOC, the Machine Loan, and the Equipment Loan. The Debtor believes Pioneer will be adequately protected by its current collateral and replacement liens on the Debtor's accounts receivable generated post-petition.

19. As the Debtor finishes its customers' orders on the tank and vessel division or sells inventory on the sales and supply division, the Debtor receives its payment for these goods,

---

[1] This valuation is based on the book valuation other than the building. Debtor does not warrant or represent that the actual value of the assets securing the indebtedness to Pioneer are as set forth above. A liquidation of this collateral could in fact result in less value than set forth herein.

services, or both. These funds make up what the Debtor shows as its accounts receivable. The Debtor projects that its collectible accounts receivable as of the filing of the petition was $497,390.10.

### *Background Facts Leading to Filing for Chapter 11 Relief*

20. The Debtor commenced operations under its tank and vessel division in 2020. The Debtor saw an increase in business during the beginning of its operations. As stated above, the Debtor purchased the Fabrication Facility to house its operations. The Fabrication Facility needed improvements in order for the Debtor's tank and vessel division to grow. Because growth seemed imminent, the Debtor determined it would relocate and lease a facility which was already in the necessary condition for the Debtor to continue to operate.

21. As the Debtor saw growth on the horizon, it increased its various lines of credit with Pioneer and began to increase its purchasing. Unfortunately, the Debtor overextended itself in purchasing inventory and equipment. Likewise, the Debtor started to experience growing pains experienced by many companies and ran into difficulty in properly analyzing the costs and time needed to complete customer jobs.

22. At the end of 2022, the Debtor realized its operations on the tank and vessel division had become out of line with its books and records. The Debtor had miscalculated times to complete jobs and was not maintaining sufficient operations to meet customer deadlines and timely satisfying orders. These issues likewise contributed to the Debtor getting behind on accounts payables to vendors.

23. With increasing demands from vendors and customers, the Debtor paused operations of its tank and vessel division at the end of January 2023. The Debtor accomplished the pause to allow for it to determine where it really sat financially and develop a strategy to

move forward. When the Debtor paused its operations, however, employees of the tank and vessel division left the job with no promise of return.

24. The sales and supply division, on the other hand, continues to sell its inventory to customers and generate business for the Debtor.

25. With increasing demand from vendors and customers, the Debtor determined the best step to take to resolve its financial issues was to seek protection under Chapter 11 of the Bankruptcy Code.

### *Current Status of Operations and Budget for Cash Collateral*

26. The Debtor currently has in its possession $61,007.29 of cash in the form of deposits in its depository accounts from collections of outstanding accounts receivable owing from its customers. Debtor has outstanding accounts receivable on the tank and vessel side in the amount of $330,410.00 and accounts receivable on the sales and supply side in the amount of $166,980.10. Debtor has an immediate need to use the cash to make payments necessary for continued operations like payroll, rent, purchase of inventory, payment on utilities, supplies, and other services.

27. If the Debtor does not have immediate use of cash, the Debtor will not be able to continue operations and improve its ability to pay back its creditors as much as possible. If the Debtor is not able to have use of its cash, the Debtor will not be able to operate, and the Debtor will experience irreparable harm.

28. Debtor has prepared a budget relating to its proposed expenditures over the next thirty (30) days which reflects the sources and uses of the funds. The budget is attached hereto and incorporated herein as Exhibit "A." Debtor believes these cash flow projections, as well as the collection of outstanding accounts receivable, will provide the Debtor the ability to propose a

confirmable plan to restructure the liabilities of the Debtor.

29. Based upon the budget, Debtor proposes to continue to operate its business on as much of a cash basis as possible going forward. Debtor would request the current use of the cash in its depository, along with proceeds from the collection of its accounts receivable, to purchase inventory, to pay payroll, to pay rent, to pay utilities, and to generally cover normal operating expenses over the next thirty (30) days until a final hearing on the use of cash collateral can be heard by the Court.

### *Need for Consideration of Motion on an Emergency Basis*

30. An immediate liquidation under any economic conditions would be a disaster for the Debtor's bankruptcy estate and its creditors, but this is even more true in our current economic climate where the country as a whole is still recovering from the COVID-19 pandemic. The Debtor's primary assets includes real estate, work-in-progress, inventory, and accounts receivable. The value of these assets in a liquidation are unknown, but assuredly would be much less than if the Debtor is able to operate. Debtor's assets are pledged to Pioneer.

31. If the Debtor completely ceases operations and immediately liquidates, the Debtor will not be able to recognize the value of its assets either through operations or a structured sales process. Any value in the Debtor's assets will be significantly diminished and will most likely not pay in full Pioneer on its indebtedness.

32. The Debtor needs to be able to use its cash and collection of accounts receivable to continue its operations. Without the use of the cash collateral the Debtor's estate will suffer immediate and irreparable harm, by forcing it to discontinue all operations, terminate its contracts, and submit to an immediate liquidation of its assets.

33. There is presently an immediate need for the use of cash collateral in the

operation of the Debtor's business, and the Debtor requests interim use of cash collateral for a period of thirty (30) days until a final hearing on the Debtor's proposed use of cash collateral can be scheduled, appropriately noticed to all creditors and parties in interest, and held. The Debtor has cash needs for the purchase of inventory, payment of payroll, payment of rent, and payment of necessary supplies for continued operations. The expenses that must be paid within the next thirty (30) days are reflected on the attached Exhibit "A." Furthermore, upon final hearing the Debtor will request a carve out for the payment of professional fees and expenses in an amount to be determined by the Debtor after its schedules and statement of financial affairs are filed.

34. The failure to have use of the cash collateral for the purposes set forth above will cause immediate and irreparable harm to the assets of the Debtor and will result in severe damage and diminution to the value of its assets and bankruptcy estate. For these reasons, the Debtor requests an emergency hearing on shortened notice of two (2) days' notice on their motion for use of cash collateral on an interim basis.

35. The Debtor hereby requests an emergency hearing on this Motion to consider interim use of cash collateral. By separate motion the Debtor will request shortened notice to affected creditors and parties in interest so the Court may consider their request for interim use of cash collateral. The Debtor requests authority to use cash collateral on an interim basis consistent with the attached cash flow projections shown on Exhibit "A." The Debtor suggests that to the extent replacement liens are necessary and appropriate to provide adequate protection that they be granted to Pioneer as the secured creditor in the same validity, nature, extent and priority post-petition as they existed pre-petition and that the Court set a hearing to consider the Debtor's continued use of cash collateral and to grant adequate protection to Pioneer in a manner consistent with the requirements of the Bankruptcy Code.

WHEREFORE, PREMISES CONSIDERED, the Debtor prays that the Court set an emergency hearing on two (2) days' notice and determine that such notice and opportunity for hearing is reasonable under the circumstances, and upon hearing of the Motion grant Debtor use of cash collateral on an interim basis as set forth in this Motion, and that the Court set a hearing on the Debtor's request for continued use of cash collateral beyond the initial 30-day period, and the Court grant such other and further relief, at law or in equity, as the Court may deem necessary and proper.

Respectfully Submitted,

By: /s/ Brad W. Odell
    Brad W. Odell:  SBN 24065839

MULLIN HOARD & BROWN, LLP
P.O. Box 2585
Lubbock, TX 79408
Tel: 806-765-7491
Fax: 806-765-0553
Email:  bodell@mhba.com
***Attorneys for Debtor, Texas Core Energy, LLC***

## CERTIFICATE OF CONFERENCE

I certify that on the 14th day of February, 2023, I communicated with Ryan Bigbee, attorney for Pioneer Bank, FSB regarding the relief requested in this Motion. Mr. Bigbee stated that Pioneer Bank, FSB does not object to the relief requested in this Motion.

/s/ Brad W. Odell
Brad W. Odell

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Motion was served on the following parties in interest via ECF and/or U.S. Mail postage prepaid or facsimile, on this 14th day of February, 2023:

1. Texas Core Energy, LLC
   Attn: Taha Habib
   13033 Quaker Avenue
   Lubbock, Texas 79424
   ***Debtor***

2. U.S. Trustee's Office
   1100 Commerce St., Room 9C60
   Dallas, Texas 75242

3. Ryan Bigbee
   Bigbee & Curtis, LLP
   P.O. Box 53068
   Lubbock, Texas 79453
   ***Attorneys for Pioneer Bank, FSB***

4. Debtor's Twenty Largest Unsecured Creditors

5. All parties receiving ECF Notice in this case.

/s/ Brad W. Odell
Brad W. Odell

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | | **BUDGET 2023** | | | | |
| 2 | | **2/17/2023** | **2/24/2023** | **3/3/2023** | **3/10/2023** | **3/17/2023** |
| 3 | | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 |
| 4 | **WEEKLY BUDGET** | | | | | |
| 5 | | | | | | |
| 6 | **BEGINNING CASH BALANCE** | 61,007 | 50,203 | 26,783 | 17,429 | 28,811 |
| 7 | Collection Accounts Receivable | 13,231 | 13,231 | 13,231 | 13,231 | 13,231 |
| 8 | Cash Sales | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | **TOTAL CASH** | 74,239 | 63,434 | 40,015 | 30,661 | 42,042 |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | **EXPENDITURES:** | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | Inventory | 5,000 | | 5,000 | | 5,000 |
| 22 | Payroll(Leased employees from TIC) | 15,635 | | 15,635 | | 15,635 |
| 23 | Health Insurance | | | | | |
| 24 | Rental & Lease Payments | | 20,744 | | | |
| 25 | Utilities | 700 | 500 | | | 700 |
| 26 | Insurance | | 13,507 | | | |
| 27 | Secured Debt Payments | | | | | |
| 28 | Building Maintenance and Repairs | 700 | 200 | | | 700 |
| 29 | Vehicle Repairs and Maintenance | | | 250 | | |
| 30 | Fuel | 1,183 | 1,183 | 1,183 | 1,183 | 1,183 |
| 31 | Travel | | | | | |
| 32 | Office Supplies | 167 | 167 | 167 | 167 | 167 |
| 33 | Advertising | 100 | 100 | 100 | 100 | 100 |
| 34 | Professional Fees | 150 | | | 150 | |
| 35 | Miscellaneous | 150 | | | | 150 |
| 36 | | | | | | |
| 37 | | | | | | |
| 38 | | | | | | |
| 39 | Sales and Use Taxes | | | | | - |
| 40 | Income Tax Accrual | | | | | |
| 41 | Subchapter V Trustee Post-Petition Retainer | 250 | 250 | 250 | 250 | 250 |
| 42 | Property Tax Accrual | | | | | |
| 43 | | | | | | |
| 44 | **TOTAL OPERATING EXP.** | 24,035 | 36,651 | 22,585 | 1,850 | 23,885 |
| 45 | | | | | | |
| 46 | | | | | | |
| 47 | **ENDING CASH BALANCE BEFORE PLAN PAYMENTS** | 50,203 | 26,783 | 17,429 | 28,811 | 18,156 |
| 48 | **Payment to Unsecured Creditors** | | | | | |
| 49 | **ENDING CASH BALANCE AFTER PLAN PAYMENTS** | 50,203 | 26,783 | 17,429 | 28,811 | 18,156 |

EXHIBIT "A"